UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KATHRYN J. MILLS,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

Defendant.

CASE NO. 11cv5770-RJB-JRC

REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT

NOTING DATE: September 14, 2012

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 12, 13, 14).

The ALJ treated an ambiguous opinion by a state agency medical consultant as if it contained no ambiguity, and then relied on the statement in order to find that plaintiff was less limited mentally in her residual functional capacity determination. The ALJ also

failed to provide specific and legitimate reasons for her failure to credit fully the opinions by plaintiff's examining doctor.

These errors were not harmless, therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

BACKGROUND

Plaintiff, KATHRYN J. MILLS, was born in 1950 and was fifty-seven years old on her date of alleged disability onset of June 8, 2007 (Tr. 16, 137). She attended school through the ninth grade, obtained her GED, and has a history of suffering from domestic violence, starting at the age of five years old and continuing for at least nine years of her childhood (*see* Tr. 244, 382, 404). An examining psychologist opined that plaintiff may have been employing alcohol in order to cope with intrusive memories of childhood sexual abuse and subsequent domestic violence (*see* Tr. 240).

Plaintiff has been diagnosed with post-traumatic stress disorder ("PTSD"), chronic, due to "extensive childhood sexual abuse, adult DV relationships" (*see* Tr. 239). Despite the opinion by this examining doctor that plaintiff suffered from functional limitations on her ability to work as a result of her mental impairments, including PTSD, the ALJ did not account for any mental or social limitations in her determination regarding plaintiff's residual functional capacity (*see* Tr. 20).

As summarized by the ALJ, plaintiff performed a variety of semi-skilled clerical jobs from 2002 through 2007 (*see* Tr. 24; *see also* Tr. 68-71, 149, 150-52, 184-95). Plaintiff testified that she became seriously ill while working in 2007 as a legal assistant

(*see* Tr. 39-41). Her job duties included making copies of court transcripts, sending out letters and helping to arrange travel and lodging for military defendants (*see* Tr. 40). Plaintiff testified that this job lasted for only a year because she was "extremely ill" (*see* Tr. 41). She elucidated: "My blood pressure was bouncing from 240 to over 137 down to not even registerable, at which time I would fall down unconscious" (*id.*).

The Court notes that during this time frame, plaintiff testified that she did not drink when she was working, although she drank "probably everyday after work" (*id.*). Plaintiff had at least the severe impairments of hypertension; alcohol dependence, nicotine dependence, chronic obstructive pulmonary disease ("COPD") and depression, as found by the ALJ (*see* Tr. 18).

## PROCEDURAL HISTORY

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on January 18, 2008 (*see* Tr. 16, 137-40, 143-45). Her applications were denied initially and following reconsideration (Tr. 86-89, 92-99). Plaintiff's requested hearing was held before Administrative Law Judge Mattie Harvin-Woode ("the ALJ") on December 2, 2009 (*see* Tr. 31-81). On January 29, 2010, the ALJ issued her written decision in which she found that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 13-25).

On July 28, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981. In September, 2011, plaintiff filed a complaint in this Court, seeking judicial review of the ALJ's written decision (*see* ECF Nos. 1, 3).

Defendant filed the sealed administrative record regarding this matter ("Tr.") on January 5, 2012 (*see* ECF Nos. 10, 11).

In her Opening Brief, plaintiff challenges the ALJ's review of the medical evidence, specifically the ALJ's review of the opinions of examining doctor, Dr. Daniel Neims, Psy.D. and non-examining medical consultant, Dr. James Bailey, Ph.D. (*see* Opening Brief, p. 1). Plaintiff also contends that the ALJ's determination of plaintiff's residual functional capacity ("RFC") failed to account appropriately for limitations resulting from plaintiff's chronic obstructive pulmonary disease ("COPD") (*id.* at p. 2).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054

(9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra,* 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

DISCUSSION

1. The ALJ failed to evaluate the medical evidence properly.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849

F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." *Vincent on Behalf of Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." *Id.* (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing Magallanes, supra*, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester*, *supra*, 81 F.3d at 831); *see also* 20 C.F.R. § 404.1527(d)(2)(i). The ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan,* 143 F.3d 1240, 1244 (9th Cir. 1998) (*citing Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)); *Andrews, supra*, 53 F.3d at 1041).

According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the

RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20.

    a.  State agency, non-examining, medical consultant, Dr. James Bailey, Ph.D. ("Dr. Bailey")

The ALJ included the following discussion in her written decision:

> DDS evaluating psychologist James Bailey, Ph.D. reviewed the claimant's medical records up to the date of his report, and opined that the claimant had no limitations to understanding and memory, and could do both simple and complex tasks (internal citation to Ex. 4F/3). Dr. Bailey opined that psychiatric symptoms may occasionally interrupt the claimant's concentration, but she can concentrate on simple and detailed tasks (internal citation to Ex. 4F/3).

(Tr. 23).

The ALJ found that Dr. Bailey's opinions were consistent with the medical record and gave them "great weight" (*id.*). The ALJ relied on Dr. Bailey's opinions, as affirmed by state agency, non-examining, medical consultant, Dr. Carla van Dam, Ph.D. ("Dr. van Dam"), in order to find that plaintiff could "perform simple and some complex tasks" in his determination regarding plaintiff's residual functional capacity ("RFC") (*see* Tr. 20; *see also* Tr. 24 (the ALJ's "residual functional capacity assessment is supported by Dr. Bailey, Dr. van Dam, Dr. Stanley (physical assessment) and Dr. Hoskins (physical assessment), as well as [] claimant's own testimony")).

Dr. Bailey indicated his opinion that plaintiff's psychiatric symptoms "may occ[asionally] interrupt concentration. can concentrate on simple and detailed tasks" (*see* Tr. 257). This comment was provided with respect to the "B" factors, and entailed a

further explanation of Dr. Bailey's opinion that plaintiff was moderately limited in her "ability to maintain attention and concentration for extended periods" (*see* Tr. 255).

The ALJ did not provide in plaintiff's RFC for any limitations on plaintiff's ability to work without occasional interruptions in her concentration or to maintain attention for extended periods (*see* Tr. 20). Instead, the ALJ relied on an ambiguous statement by Dr. Bailey as if it was not ambiguous, in order to find implicitly that plaintiff did not have occasional interruptions in her ability to concentrate (*id.*). *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Regarding the ability of people limited to sedentary work to keep their jobs if they are limited by interruptions to concentration occasionally, defined by the agency as up to one-third of the day, the vocational expert testified generally that if "you are not functioning for 30% of the day, you're not going to hold your job for very long" (*see* Tr. 76). Therefore, the ALJ's failure to resolve explicitly the ambiguity as to whether or not plaintiff had occasional interruptions to concentration is not harmless error.

The Court concludes that the ALJ's determination that plaintiff could "perform simple and some complex tasks" (Tr. 20) is not supported by substantial evidence in the record as a whole, given the opinion by Dr. Bailey that plaintiff may have occasional interruptions to concentration (Tr. 257) and his opinion that she had moderate limitations in her ability to maintain attention and concentration for extended periods (Tr. 255). Dr. Bailey's opinion, as affirmed by Dr. van Dam, is the only medical opinion relied on by the ALJ regarding plaintiff's mental residual functional capacity and her limitations resulting from mental impairments (*see* Tr. 24).

The Court also notes that Drs. Bailey and van Dam opined that plaintiff required "clear expectations during changes in the work place" (*see* Tr. 257). The ALJ did not account for this limitation and did not explain why it was not included in the ALJ's determination regarding plaintiff's RFC. *See Bray*, *supra*, 554 F.3d at 1226-27 ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking") (*citing Chenery Corp*., *supra*, 332 U.S. at 196). However, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20.

Based on the reasons stated and the relevant record, the Court concludes that the ALJ's determination regarding plaintiff's RFC and her findings regarding the opinion of Dr. Bailey are not findings based on substantial evidence in the record as a whole. The Court also concludes that the ALJ's review of the medical opinion of Drs. Bailey and van Dam contains potentially harmful error. Therefore, this matter should be reversed and remanded to the Commissioner for further consideration.

b. Dr. Daniel Neims, Ph.D. ("Dr. Neims"), examining doctor

Dr. Neims examined plaintiff on multiple occasions and performed multiple mental status examinations (*see* Tr. 238-252, 395-405, 411-22). Among other opinions, Dr. Neims opined that plaintiff suffered from marked limitations in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting and

moderate to marked limitations in her ability to interact appropriately in public contacts (*see* Tr. 240, 400, 414). The ALJ included the following in his written decision:

> DSHS evaluating psychologist Daniel Neims, Psy.D. examined the patient on 3 occasions and opined that the claimant had a moderate to marked global illness and a Global Assessment of Functioning Score of 50 (internal citation to Ex. 1F/2; Ex. 16F/3; Ex. 18F/3). Dr. Neims also noted that the claimant had moderate social withdrawal, and no indication of recent alcohol abuse (internal citation to Ex. 1F/2; Ex. 18F/3). He noted that the claimant had a marked limitation in her ability to interact appropriately in public contacts (internal citation to Ex. 18F/4). These assertions are not consistent with the medical record that shows the claimant to be a known alcoholic, who socialized at a bar with friends several times per week. Dr. Neims' opinion is not consistent with the medical record or with the claimant's testimony, and is thus given little weight.

(Tr. 22-23).

The Court initially notes that on January 23, 2008, Dr. Neims indicated that there was a history of alcohol or drug abuse and also diagnosed plaintiff with alcohol abuse, episodic (*see* Tr. 239). Dr. Neims indicated similar findings on October 3, 2008, except that on this occasion his diagnosis was alcohol abuse, continuous (along with other relevant diagnoses) (*see* Tr. 397). Again, on September 29, 2009, Dr Neims diagnosed plaintiff with alcohol abuse, episodic, and provided for a rule out diagnosis of alcohol dependence, episodic (*see Tr*. 413). At this last examination, he indicated that there was no indication or recent alcohol abuse, and explained that plaintiff detailed "history of daily drinking 6 months ago. Notes episodic drinking at present. May impact issues of depression, yet likely drinking is maladaptive response to issues of sadness, hopelessness, and traumatic stress" (*id.*).

It is clear from a review of Dr. Neims' statements that he was well aware that plaintiff was "a known alcoholic," as he diagnosed plaintiff with alcohol abuse on every occasion on which he examined her (*see* Tr. 239, 397, 413). In addition, on one of the pages cited by the ALJ in support of her finding that Dr. Neims noted "no indication of recent alcohol abuse," Dr. Neims checked the box "yes," demonstrating his opinion that there was an "indication of alcohol or drug abuse" (Tr. 22; *see also* Tr. 239). This assessment was made despite plaintiff's assertion to Dr. Neims that she was not abusing alcohol (*see* Tr. 239 ("Clt denies alcohol abuse")).

The other page cited by the ALJ in support of this finding included Dr. Neims' indication that there was no indication of current or recent alcohol abuse, but this indication was heavily qualified, as already discussed (*see* Tr. 413 ("history of daily drinking 6 months ago. Notes episodic drinking at present. May impact issues of depression, yet likely drinking is maladaptive response to issues of sadness, hopelessness, and traumatic stress")). It also was given in the context of a diagnosis for alcohol abuse on the very same page, along with a rule out potential diagnosis of alcohol dependence (*see id.*). Based on a review of the relevant record, including all of Dr. Neims' evaluations, the Court finds that Dr. Neims' notation of plaintiff's report of daily drinking six months prior, and current "episodic drinking," along with his diagnosis of alcohol abuse and an indication of a lack of current or recent alcohol abuse is consistent with reports of plaintiff "socializ[ing] at a bar with friends several times per week" (*see* Tr. 23).

The Court also notes that the ALJ appears to rely on an implicit finding that an individual who socializes at a bar with friends several times per week demonstrates so conclusively that she currently is abusing alcohol, that it justifies rejecting all of the opinions of an examining psychological doctor who once indicated that she was not currently or recently abusing alcohol, in the context of the doctor's contemporaneous diagnosis of alcohol abuse (*see id.*). Based on the reasons stated and the relevant record, the Court concludes that the ALJ's characterization of Dr. Neims' opinion on this issue as that he noted "no indication of recent alcohol abuse" is not based on substantial evidence in the record as a whole.

In addition, regarding Dr. Neims' opinions about social limitations, when making the assessment that plaintiff suffered from moderate or marked limitation in her ability to interact appropriately in public contacts and suffered from moderate social withdrawal, Dr. Neims opined as such regarding plaintiff's "ability to perform on a normal day to day work basis" (*see* Tr. 240, 400, 414). Socializing in a bar with friends several times per week does not transfer necessarily to appropriate social or public behavior on a normal day to day, full time, work basis. Therefore, the fact that plaintiff socialized at a bar with friends several times per week does not demonstrate that she lacks limitations in her abilities to perform socially "on a normal day to day work basis" (*see id.*) and does not demonstrate any error in Dr. Neims' opinions.

As a result, based on the records as a whole, the Court concludes that the ALJ's finding that Dr. Neims' medical opinions or assessments were not consistent with the fact that plaintiff was a known alcoholic who socialized in a bar several times a week is not a

finding based on substantial evidence in the record as a whole. All of Dr. Neims' opinions are consistent with this reported fact, in the context of his evaluation as a whole. For this reason and based on the relevant record, the Court also concludes that the ALJ failed to provide specific and legitimate reasons for her failure to credit fully the opinions from Dr. Neims.

For the reasons discussed, and based on the relevant record, the Court concludes that harmful error was committed during the review of the medical evidence and that this matter should be reversed and remanded for further consideration.

2. Plaintiff's testimony and residual functional capacity ("RFC") should be evaluated anew and the five-step sequential disability evaluation process should be completed anew following a *de novo* hearing.

The Court already has determined that the medical evidence was not evaluated properly, *see supra*, section 1. A review of a claimant's credibility and testimony depends, in part, on an assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, although the ALJ provided a clear and convincing reason to discount plaintiff's testimony in the discussion of plaintiff's multiple inconsistent statements, the Court concludes that plaintiff's testimony should be evaluated anew following a *de novo* hearing.

The Court also notes that the ALJ found that plaintiff could bend frequently and could stand or walk six hours in an eight-hour work day (*see* Tr. 20), without discussion of the medical evidence and objective observations by plaintiff's medical providers that her COPD may have caused more limitations than provided for in plaintiff's RFC (*see*

Reply, ECF No. 14, pp. 7-10). Significant, probative evidence should be discussed explicitly when it is rejected. *See Vincent*, *supra*, 739 F.2d at 1394-95 (*quoting Cotter*, 642 F.2d at 706-07). Similarly, based on a review of the relevant record, the Court concludes that the severity of plaintiff's PTSD explicitly should be evaluated further following remand, as should the severity of plaintiff's limitations resulting from her PTSD, combined with limitations from her other mental impairments.

Therefore, plaintiff's RFC also must be assessed anew. This will provide the Administrative Law Judge assigned to this matter following remand ("the remand ALJ") an opportunity to address and consider explicitly the medical evidence suggesting greater limitations than was determined to exist in plaintiff's RFC in the written decision discussed herein. Based on the reasons discussed and the relevant record, the Court concludes that following remand of this matter, the remand ALJ also should complete the sequential disability evaluation process anew following a *de novo* hearing.

## CONCLUSION

The ALJ erred in her review of the medical evidence by relying on an ambiguous opinion from a state agency, non-examining medical consultant, and an inadequately-supported characterization of an examining doctor's opinion. The ALJ also failed to discuss significant, probative evidence. As a result, the ALJ's determination regarding plaintiff's residual functional capacity and her ultimate conclusion that plaintiff was not disabled is not supported by substantial evidence in the record as a whole.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

405(g) to the Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **September 14, 2012**, as noted in the caption.

Dated this 22nd day of August, 2012.

J. Richard Creatura
United States Magistrate Judge